UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LIVING WATER CHURCH OF GOD,
d/b/a Okemos Christian Center, a
Michigan Ecclesiastical Non-Profit
Corporation,

          Plaintiff,

                              File No.  5:04-CV-06

v.

                              HON. ROBERT HOLMES BELL

CHARTER TOWNSHIP OF
MERIDIAN, et al.,

          Defendants.

_____/

## O P I N I O N

    Plaintiff Living Water Church of God, d/b/a Okemos Christian Center, filed this

action against Defendants Charter Township of Meridian and individual Meridian Township

Board members claiming that Defendants violated Plaintiff's rights under the Religious Land

Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"),[1]

when they denied Plaintiff's application for a Special Use Permit to build a structure in

_____

    [1]Although Plaintiff's complaint also alleged violations of various other constitutional
and statutory rights, during the pretrial period the parties and the Court narrowed the legal
issue to those involving the RLUIPA.  (Pl. Tr. Br. at 2).  Plaintiff's complaint also alleges
claims against the individual Township Board members, Susan McGillicuddy, Mary
Helmbrecht, Bruce D. Hunting, Julie Brixie, Steve Stier, Andrew J. Such, and Anne M.
Woiwode, in their official capacities.  The Court declines to address these claims because
they are no different than the claim against the Township which is a named defendant.

excess of 25,000 square feet on its property in Meridian Township. This matter was tried to the Court on February 28-29, 2005, at which time the Court heard the testimony of Craig Dumont, senior pastor of Okemos Christian Center, Steve Shuptar, former interim director of Dominion Leadership Academy, Brian Compton, children's pastor of Okemos Christian Center, Richard F. Brown, Jr., associate planner at Meridian Township, and Mark Robert Kieselbach, director of community planning and development at Meridian Township. This opinion contains the Court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

## I.

Plaintiff Living Water Church of God, d/b/a Okemos Christian Center, is the owner of a six acre parcel of land in Meridian Charter Township, located at 2630 Bennett Road. The property is zoned RA, single family residential, medium density.

Under the Meridian Township Zoning Ordinance a religious or educational institution is permitted in a residential zone only if a Special Use Permit ("SUP") is obtained. Ord. 86-373, 86-368, 86-654. The Township Ordinance requires a separate and additional SUP to build a building larger than 25,000 square feet. Ord. 86-658.

In 1994 Plaintiff applied for a Special Use Permit (#94071) to erect a single story 10,925 square foot building for use as a sanctuary and day care for 40 children. The Township granted the application in January 1995. (Letters approving SUP #94071, Def. Ex. V-1(A) at 25 & 27). Plaintiff discussed its future plans for the property with the Township

and the Township understood that the sanctuary and day care center represented only the first phase of a multi-phase building plan for the property. (Dumont at 11; Letter approving SUP #94071, Def. Ex. V-1(a) at 25).

In the spring of 2000 Plaintiff requested and obtained an SUP (#00-94071) to increase enrollment at the day care center to 72 children and to construct a 28,500 square foot school building for students in kindergarten through 8th grade. Although Plaintiff initially sought approval for enrollment of 360 students, Plaintiff voluntarily limited enrollment to 280 at the request of the Township. (Def. Ex. V-1(C) at 208-09, 221-24; Dumont at 23-25). Plaintiff made several other concessions, including delaying its start time so as not to interfere with traffic to nearby schools, doing without athletic fields, and paying for construction of a deceleration lane to lessen the traffic impact. (Dumont at 26 & 33; Brown at 188, 192-93; Keiselbach at 253). Upon receiving the SUP Plaintiff immediately began promoting the school and raising money for construction. (Dumont at 24).

By letter dated March 7, 2001, Plaintiff was advised that its SUP for construction of the 28,5000 square foot school would expire on May 19, 2001, unless Plaintiff obtained an extension or began substantial construction of the project. (Def. Ex. V-2 at 464). Although Plaintiff made a timely request for an extension, the Township denied its request by letter dated May 9, 2001, because "the Planning Commission can no longer consider requests for extensions." (Def. Ex. V-2 at 462-63). Up until May of 2001 the Township had a policy of granting extensions on SUPs. (Brown at 179). Mr. Brown, who has worked at the Township

since 1995, was not aware of any previous requests for extensions that had not been granted. (Brown at 179).  However, in the spring of 2001 the Township changed township attorneys and the new township attorney issued a legal opinion in a letter dated April 27, 2001, that the extension of an SUP in another case was without effect.  (Brown at 172 & 179; Kieselbach at 21).  Subsequently, on May 15, 2001, the Township passed a resolution that because the Zoning Ordinance had no provision for extending an SUP, any request for extension of an SUP must be treated as an application for a new SUP and be subject to all of the requirements of a new SUP request.  (Def. Ex. V-2 at 476).

As a result of the unprecedented denial of the extension of time to proceed on the 2000 SUP, Plaintiff lost its initial investment of $35,000 or $40,000 in planning documents. (Dumont at 27).  Before submitting a new petition, Rev. Dumont met with the Township's planning staff to determine how best to address the Township's concerns with the project. He was told that he needed to reduce enrollment further.  (Dumont at 28).  In response to the Boards's concerns with intensity of use, Plaintiff agreed that in addition to the concessions it made in connection with its 2000 SUP, it would agree to further reduce the number of students from 280 to 125.

On May 21, 2003, Plaintiff filed an application for an amendment to its SUP to build a Christian Education Building of 34,989 square feet.  (SUP #03-94071).  The 2003 building proposal included more square footage than the 2000 proposal that had been approved. However, the outward appearance of the two proposals was substantially the same.  In fact,

the footprint of the 2003 building proposal was 1500 square feet smaller than the 2000 proposal because it included a larger basement.

The 2003 proposal was reviewed and approved by the various township departments including community planning and development, EMS/fire, police, engineering, county drain commissioner, county road commissioner.  (Brown at 201).  The 2003 proposal complied with every ordinance regulating lot coverage, setbacks, height , appearance, location and use once the SUP for a school was approved.

The Planning Commission had authority to approve the use of the property for a school and would provide a recommendation to the Township Board regarding the size of the proposed building.  The Township Board had the final decision on the size of the proposed building.

The Planning Commission held a public hearing on June 23, 2003.  The 2003 SUP request was again discussed by the Planning Commission on July 14, 2003.  On July 23, 2003, the Planning Commission voted 3-2 to approve the SUP for use as a school and recommended that the Township Board approve the SUP for combined buildings size in excess of the 25,000 square foot limit.

On August 7, 2003, the Township Clerk received an appeal of the Planning Commission's approval of the SUP for school use.  The Planning Commission provided a packet of documents for the Township Board to review.  The packet included a table entitled Land Area to Building Ratios which lists the amount of land compared to building size for

each of the public and private schools in the Township. The ratios were developed for the purpose of reviewing Plaintiff's application and they have not been applied to any other applicants since their creation. (Kieselbach at 236-37). The ratios do not take into consideration the presence or absence of athletic fields or the enrollment of the schools. (Def. Ex. M; Brown at 176 & 202; Keiselbach at 245-46). It is doubtful whether the building sizes included bus garages at Haslett High School and Meridian High School, or whether they included basements. (Brown at 185; Keiselbach at 244). Most of the data on the table comes from public schools even though public schools are state regulated and not subject to municipal land use regulation. (Brown at 194; Kieselbach at 228).

There is no standard in the ordinance or the Comprehensive Development Plan as to what land to building ratio is appropriate for a school. (Brown at 200-03; Keiselbach at 246). The Comprehensive Development Plan does reference criteria established by the National Education Association to evaluate school facilities. Those criteria state that the desirable site size is 10 acres for an elementary school, 20 acres for a middle school, and 40 acres for a high school. (Def. Ex. V-5). These criteria address total land, and not land to building ratio. Although the Comprehensive Development Plan states that all of the schools in the Township are in compliance with these site standards, that is not in fact the case. *Id.* Table 29 on page 165 of the Plan does not include Ralya elementary and Meridian highschool which together sit on a 13 acre parcel rather than the prescribed 50 acres. Table 29 also fails to include the Montessori School which is on a 6 acre parcel rather than the prescribed 10 acres.

On October 21, 2003, the Board affirmed the Planning Commission's approval of the SUP allowing "the non-residential use of an appropriately sized school in a residential district" subject to conditions, including a maximum enrollment of 125 students.  Resolution to Affirm SUP #03-94071 (Def. Ex. U-15).  On the same date the Board denied the SUP for "construction of an addition that results in a building or combination of buildings with a gross floor area of 25,000 square feet or greater."  Resolution to Deny SUP #03-94071 (Def. Ex. P).  The reason given for the denial was that "the size of the proposed church and school facility in relationship to the size of the subject site is out of proportion to similarly situated schools and combined church and school facilities within the Township and inconsistent with those review criteria and standards for the granting of a special use permit contained in Sections 86-126(1), (2), (3) and (4)."  *Id.*

Density and land to building ratios are addressed in the Township's Comprehensive Development Plan.  For example, for commercial developments the Township applies a 5 to 1 ratio and for office use it applies a 3.2 to 1 ratio.  (Brown at 204; Kieselbach at 237).  There are no ratios, however, for non-residential uses permitted by SUP in a residential district such as churches, private schools, nursing homes, day care centers, and fraternity or sorority houses.  (Keiselbach at 247).

In the past 10 years the Township Board has only denied two SUP applications for buildings larger than 25,000 square feet – one for Wal-Mart and the other for Plaintiff.  The Wal-Mart building project was eventually approved through a court settlement.  (Kieselbach

at 236).  In 2004 the Board approved an SUP for a building of 32 dwelling units on 5.07 acres of land.   (Kieselbach at 23).

In 2001 Plaintiff opened its school, the Dominion Leadership Academy, a school for boys, at a church building in Grand Ledge, 25 miles from the Meridian Township church. (Dumont at 16).  Due to difficulties in transporting the students this distance, the school was moved in 2002 to a house in Okemos that was only two and a half miles from the church. (Dumont at 18-19).  This facility was too small and detracted from enrollment, so Plaintiff moved the school to an office building on the same piece of property pending its sale. (Dumont at 20).  This facility was still not ideal because Plaintiff had to rent gym facilities. Moreover, this property is zoned professional/office, and schools are not an allowed use in the office district.  (Kieselbach at 229).

Plaintiff's membership rolls have doubled in recent years.  The current facility does not meet the needs of the current members, let alone provide space to add services and seating for new members. The sanctuary in the current facility is a multi-purpose room that is also used for day care and for teen activities.  At least once a week the sanctuary had to be broken down for the day care and then re-set up as a sanctuary for use on Sunday morning. (Dumont at 41-42).  Due to the challenges of sharing this space, the day care center was recently closed after operating for eight years.  Half of the church staff is occupying offices in a rented facility off site.  The church needs additional room for the children's program on Sundays and weekday evenings, weekly men's group meeting, weekly women's group

8

meeting, for evening seminars for adults, for wood shop programs and other special events. (Dumont Test. at 33-35). The same staff operates the church and the school, so it is difficult to coordinate the staff when they are not on the same property.  (Dumont at 36).  Plaintiff seeks to bring the school onto the church property and to share the building for church and school related functions.  Plaintiff has been losing current and potential members due to the frustration and confusion caused by the space constraints.  Plaintiff is also limited in its ability to recruit students for the school because of the uncertainty about the future space and the current lack of programming associated with the lack of space.

## II.

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA" or the "Act") provides in pertinent part that:

> No government shall impose or implement a land use regulation in a manner that imposes a **substantial burden** on the **religious exercise** of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution –
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1) (emphasis added).  A plaintiff may not rely on RLUIPA unless it first demonstrates that the facts of its case trigger one of the three statutory bases for jurisdiction.  *Prater v. City of Burnside*, 289 F.3d 417, 433 (6th Cir. 2002).  In this case, Plaintiff relies on the third statutory basis:

(C) the **substantial burden** is imposed in the implementation of a **land use regulation** or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, **individualized assessments** of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)(2)(C) (emphasis added).

The Act defines a "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land . . . , if the claimant has an ownership, . . . or other property interest in the regulated land . . . ." 42 U.S.C. § 2000cc-5(5). There is no question that the denial of the SUP involved the implementation of a land use regulation.

## A. Religious Exercise

Defendants contend that Plaintiff's operation of a school with topics similar to and consistent with topics taught in a secular school and other related recreational and other activities normally associated with a secular school or institution does not constitute the exercise of religion which is protected by RLUIPA. The Court disagrees.

The Act defines "religious exercise" to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7)(A). Thus, under RLUIPA, courts no longer need to analyze whether a claimed religious activity is an integral part of one's faith. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004). *Midrash Sephardi* involved a challenge to

a zoning ordinance that prohibited churches and synagogues in the business district. The

Eleventh Circuit held that:

> In passing RLUIPA, Congress recognized that places of assembly are needed to facilitate religious practice, as well as the possibility that local governments may use zoning regulations to prevent religious groups from using land for such purposes. Thus, challenges to zoning ordinances are expressly contemplated by the statute, and there is no doubt that the congregations' challenge concerns "religious exercise" within the meaning of RLUIPA.

*Id. See also Episcopal Student Foundation, d/b/a Canterbury House v. City of Ann Arbor*,

341 F. Supp.2d 691, 700 (E.D. Mich. 2004) (by providing statutory definition of "religious

exercise," RLUIPA obviates need to analyze whether "religious exercise" implicated by

government action was central to the litigant's faith).

Accordingly, the Court concludes that Plaintiff's use of the proposed facility for a

religious oriented school and for other ministries of the church constitutes religious exercise.

**B. Individualized Assessment**

The Court turns to the issue of whether the denial of an SUP based upon the size of

the building represented an individualized assessment. The individualized assessment has

been characterized as a jurisdictional requirement of the RLUIPA. *Midrash Sephardi*, 366

F.3d at 1225 (holding that RLUIPA "applies only if one of three jurisdictional tests is first

met"); *Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.*, 259 Mich. App. 315,

326-27, 675 N.W.2d 271 (2003).

In *Shepherd Montessori* the court held that an ordinance that permitted the township

board of appeals to authorize relaxation of the ordinance provisions and to grant variances

11

in certain cases based on "unnecessary hardship or practical difficulty" invited individualized assessments.  *Id.* at 327-28. Similarly, in *Hale O Kaula Church v. Maui Planning Comm'n*, 229 F. Supp.2d 1056 (D. Haw. 2002), the court held that a statute allowing special use permits for an "unusual and reasonable use," giving consideration to its adverse effect on surrounding property and whether it would unreasonably burden public agencies to provide roads, sewers, police and fire protection, was an "individualized assessment," and called for strict scrutiny.  *Id.* at 1073.

The general rule that emerges from the case law is that the determination of whether the governmental action is an "individualized assessment" depends on whether the decision was subjective in nature:

> Thus, even assuming that a governmental entity's enactments are neutral laws of general applicability, their application to particular facts nevertheless can constitute an individualized assessment--particularly where, as here, the application does not involve a mere numerical or mechanistic assessment, but one involving criteria that are at least partially subjective in nature.

*Corp. of the Presiding Bishop v. City of W. Linn*, 192 Ore. App. 567, 583 (Or. Ct. App., 2004).

Defendants denied the SUP in part on the basis that the "the size of the proposed church and school facility in relationship to the size of the subject site is out of proportion to similarly situated schools and combined church and school facilities within the Township." Resolution to Deny SUP #03-94071 (Def. Ex. P).

The Township's determination that the proposed building was out of proportion was based on a chart of land area to building ratios of public and private schools in the Township. (Ex. M). Although the ratio of land area to building is objective in and of itself, nothing in the ordinance indicates that such a consideration is appropriate. The lot size to building ratio has not been applied in evaluating other applications for SUPs for buildings larger than 25,000 square feet. In fact, the chart was specially created for use in reviewing Plaintiff's proposal. There is nothing in the chart or the Ordinance or any other document indicating what the proper land to building ratio should be. In 2000 when the Township considered land to building size ratios, it approved Plaintiff's proposal. In 2003, on similar facts, it denied Plaintiff's proposal.

The denial was also based in part on the rationale that the proposed building was "inconsistent with those review criteria and standards for the granting of a special use permit contained in Sections 86-126(1), (2), (3) and (4)." These review criteria require the applicant to assure that:

    1. The project is consistent with the intent and purposes of this chapter.

    2. The project is consistent with applicable land use policies contained in the township's comprehensive development plan of current adoption.

    3. The project is designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such a use will not change the essential character of the same area.

4.   The project will not adversely affect or be hazardous to existing neighboring uses.

(Ex. Q).  The Township did not explain how the proposal was inconsistent with these criteria.

All of these criteria are subjective in nature.  They do not constitute a neutral law of general applicability.  This is evidenced by the fact that when the Township applied the same criteria to similar proposals on the same property in 2000 and 2003 it obtained different results.  In 2000 the Township approved a building proposal with a larger enrollment and a larger footprint.  Applying the same criteria in 2003 the Township denied a building proposal with a smaller enrollment and a smaller footprint.  The Ordinance enables Township officials to individually evaluate and either approve or disapprove of private schools in potentially discriminatory ways.  Accordingly, the review criteria for SUPs for schools clearly requires an individualized assessment.  *See Midrash Sephardi*, 366 F.3d at 1225 (holding that ordinance enabling town officials to "individually evaluate and either approve or disapprove of churches and synagogues in potentially discriminatory ways" was "quintessentially an 'individual assessment' regime vis-a-vis churches and synagogues").  *See also Episcopal Student Foundation, d/b/a Canterbury House v. City of Ann Arbor*, 341 F. Supp.2d 691, 699 (E.D. Mich. 2004) (holding that provision requiring applications for alteration, removal, or demolition of a structure within an historic district to be reviewed individually by Historic Commission in light of five factors was an individualized assessment).

The Court concludes that the action by Meridian Township in denying the SUP for building in excess of 25,000 square feet was an individualized assessment of the proposed

use of the property.  Plaintiff has accordingly satisfied this statutory basis for jurisdiction under RUILPA.

## C.  Substantial Burden

The next issue for the Court's consideration is whether the denial of the SUP for the building in excess of 25,000 square feet imposes a substantial burden on Plaintiff's religious exercise.

Plaintiff contends that as a result of the denial of an SUP for a 35,000 square foot addition, its ability to further its religious and educational missions is substantially burdened. The Township notes that Plaintiff can still add approximately 14,000 square feet to the existing church without obtaining an additional SUP, and contends that Plaintiff's concerns amount to no more than claims of inconvenience, economic burdens, or the inability to establish a desired religious use on a single specific sight, none of which amount to a substantial burden under RLUIPA.

"Substantial burden" is not defined in the RLUIPA.  However, the legislative history indicates that it is to be interpreted by reference to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4 and First Amendment jurisprudence.  *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003); *Canterbury House*, 341 F. Supp.2d at 701.  In *Civil Liberties* the Seventh Circuit adopted the following definition of substantial burden:

> [I]n the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that

necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise – including the use of real property for the purpose thereof within the regulated jurisdiction generally – effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

The Eleventh Circuit has declined to adopt the Seventh Circuit's definition because "it would render § b(3)'s total exclusion prohibition meaningless." *Midrash Sephardi*, 366 F.3d at 1227.[2]   The Eleventh Circuit agrees, however, that "substantial burden" requires something more than an incidental effect on religious exercise:

[A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

*Id.*

In *Westchester Day School v. Village of Mamaroneck*, 386 F.3d 183 (2nd Cir. 2004), the district court entered summary judgment in favor of the plaintiff on the basis that the denial of its application to construct a new school building imposed a substantial burden on the exercise of religion in violation of RLUIPA.  The Second Circuit reversed and remanded because it determined that there were issues of fact as to whether the denial was so complete as to foreclose consideration of a modified application, and because there were questions of

---

[2]Section b(3) provides that "[n]o government shall impose or implement a land use regulation that--(A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

fact that prevented the district court from concluding, as a matter of law, that the board's traffic concerns were not compelling. *Id.* at 187-92. The Second Circuit did not rule on the meaning of "substantial burden" under RLUIPA, but cautioned the district court not to go beyond "the proper function of protecting the free exercise of religion into the constitutionally impermissible zone of entwining government with religion in a manner that prefers religion over irreligion and confers special benefits on it." *Id.* at 190.

Recently the Seventh Circuit found a substantial burden on religious exercise where the denial of an application for rezoning resulted in delay, uncertainty, and expense:

> The burden here was substantial. The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial.

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005).

Similar practical considerations were suggested by the Michigan Court of Appeals in *Shepherd Montessori Center v. Ann Arbor Charter Twp.*, 259 Mich. App. 315, 675 N.W.2d 271 (2003). In *Shepherd Montessori* the court noted that a government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion. *Id.* at 330. For a burden on religion to be substantial under RLUILA, "the government regulation must compel action or inaction with respect to the sincerely held belief; mere inconvenience to the religious institution or adherent is

insufficient." *Id.*  The court reversed the entry of summary judgment in favor of the township and remanded for consideration of the following factors:

> whether there are alternative locations in the area that would allow the school consistent with the zoning laws; the actual availability of alternative property, either by sale or lease, in the area; the availability of property that would be suitable for a K-3 school; the proximity of the homes of parents who would send their children to the school; and the economic burdens of alternative locations. These types of factors must be taken into consideration in determining whether there has been a substantial burden on religious activity.

*Id.* at 332-33.

In *Canterbury House* the plaintiff challenged the city's denial of its application to demolish its existing building to build a larger facility under RLUIPA.  The court found no substantial burden on the plaintiff's religious exercise within the meaning of RLUIPA because it found that there were other feasible practical alternatives.  The court noted that the plaintiff was not using half of its current building space, that there was no indication that the plaintiff could not fulfill its religious mission at other locations, and that the financial burdens were not substantial.  341 F. Supp.2d at 704-06.

Plaintiff is a church with a day care and educational mission related to its "Christian world view."  Plaintiff is unable to practice its religious beliefs in its current location because the facilities are too small for the needs of the congregation and staff.  Lack of adequate space has already forced Plaintiff to choose between its daycare ministry and its Christian Education ministry.  Plaintiff is severely limited in its ability to recruit for the school because of the uncertainty about the future space and the current lack of programming.

18

Adding a 14,000 square feet addition for a total of 25,000 square feet of building space would not resolve the space problems. Plaintiff's congregation has grown beyond its current space. Although Plaintiff intends for the church and the school to share the use of the buildings, a total of 25,000 square feet will not accommodate Plaintiff's need for classrooms, a gymnasium, a sanctuary, day care rooms, offices and meeting rooms. Having the church and the school in two separate locations is also not feasible. Plaintiff's attempts to operate the church and the school in two separate locations in the past has been hampered by issues associated with transportation, cost and shared employees. There is also no guarantee that the school and church could build anywhere else in the Township.

The Township would like this Court to view the 2003 SUP application in isolation. If this Court were to do so, this Court might conceivably agree with the Township that the denial of an SUP for a certain sized building on a specific lot would not qualify as a substantial burden on religious exercise. However, the Court cannot view the 2003 SUP application in isolation. Plaintiff has had a long history with the Township. The 2003 SUP application must be viewed in the context of this history. The Township was aware of Plaintiff's plans to expand since Plaintiff made its first application for an SUP in 1995. The Township granted Plaintiff's application for construction of a 28,500 square foot addition in 2000, and then, after inviting Plaintiff to apply for an extension of the SUP, and on the eve of the expiration of the SUP, suddenly abandoned its long practice of allowing extensions of SUPs. Plaintiff worked diligently and in good faith with the Township to address its

19

concerns before submitting a revised 2003 proposal. Plaintiff also expended significant energy and funds in creating the 2003 proposal. The 2003 proposal went farther than the previously approved 2000 plan in addressing the Township's concerns about enrollment, and its footprint was smaller than the 2000 plan. The Township then denied the 2003 proposal on arbitrary grounds that were not contained in the ordinance.

If Plaintiff reduces the size of the proposed building the building plans will have to be redone and resubmitted. Although there may be larger lots of residential zoned land available in the Township, the Township no longer renews SUPs, so Plaintiff would have to resubmit an application for use of the property for a school. Because private schools are not a permitted use anywhere in the Township, there is no guarantee that Plaintiff will receive permission to build a school, regardless of size, at this location or anywhere else within the Township. Plaintiff is a small church with limited funds. The burden imposed by the denial of the SUP is not merely an inconvenience. *See Midrash Sephardi*, 366 F.3d at 1227. Plaintiff will incur delay, expense and uncertainty if it is required to reapply or search for another site. *See Sts. Constantine and Helen*, 396 F.3d at 901. Denial of the SUP is directly responsible for rendering Plaintiff's ability to use its real property for its religious purposes effectively impracticable. *See Civil Liberties*, 342 F.3d at 761. The Court concludes that the denial of the SUP to construct a building in excess of 25,000 square feet on Plaintiff's parcel imposes a substantial burden on religious exercise under RLUIPA.

**D.  Compelling Governmental Interest/Least Restrictive Means**

"If a land-use decision . . . imposes a substantial burden on religious exercise . . . and the decision maker cannot justify it, the inference arises that hostility to religion, or more likely to a particular sect, influenced the decision." *Sts. Constantine and Helen*, 396 F.3d at 901.  Accordingly, a substantial burden on religious exercise will only be allowed under RLUIPA if it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1).

The denial of the SUP in this case does not pass the strict scrutiny test.  It does not further a compelling Township governmental interest and it is not the least restrictive means of achieving any interest the Township does have.

The Township justified its denial of the SUP for a building in excess of 25,000 square feet on the basis of its interest in the density of the land to building ratio.  This is undeniably a valid interest.  The Township Ordinance provides that a special use permit is required for a building or a group of buildings in excess of 25,000 square feet "due to the significant impact such development has upon adjacent property owners, neighborhoods, and public infrastructure."  (Ord. 86-658, Def. Ex. Q).  The Township has not, however, shown that its interest in density was a compelling interest in this case.  The Township had already approved Plaintiff's 2000 proposal which had a larger footprint.  The additional square footage in the 2003 proposal was dedicated to a basement that would not be visible.  The Township has not shown what negative impact the basement would have on the adjacent

property owners, neighborhoods or infrastructure, particularly in light of the fact that enrollment under the 2003 proposal was reduced from the 280 students approved in 2000 to only 125 students.

Moreover, the land to building ratio chart used by the Township, although seemingly objective, was in fact meaningless.  The land to building ratio has not been applied to any other proposal.  It was created specifically to address Plaintiff's proposal.  The land to building ratio does not address enrollment, and accordingly has no relevance to intensity of use.  Its concern is only with the ratio of the size of the physical structure to the size of the land.  However, the Township has no guidelines specifying what is an acceptable ratio and what ratio is too dense.  Moreover, the ratio does not contain any guidelines as to what buildings or parts of buildings should count toward the total square footage.  The entire 38,500 square footage of the Plaintiff's project was considered even though 11,000 square feet were devoted to a basement that was not visible to the public.  On the other hand, the Township officials were not sure whether the square footage for the public schools to which it was compared included basements, bus garages or portable classrooms.  The land to building ratio also fails to take into consideration athletic fields which would affect the amount of land required by a school.  Most of the comparison schools have athletic fields, whereas Plaintiff was required to agree not to have any athletic fields.

Most of the data on the land to building ratio chart comes from public schools.  Public schools are state regulated and are not subject to township zoning ordinances.  Unlike private

schools, public schools do not have to obtain SUPs.  Public schools are also supported by public funds.  Public schools are simply not similarly situated to private schools.

The Township cites to the Comprehensive Development Plan's adoption of the NEA guidelines in support of its use of a land to building ratio for schools.  The interests of the NEA and the purposes of the NEA guidelines do not mirror the interests or the purposes of a zoning body.  The NEA is a national teachers' union that promotes the interests of public school teachers.  It promotes what it believes is an ideal public school setting.  Its recommendations are not based on the same land regulation considerations that concern a township zoning board.

There are other non-residential uses in a residential area, including churches, private schools, nursing homes, day care centers, fraternity, sorority houses (Keiselbach at 247) that Plaintiff's project might have been compared to.  Instead, Plaintiff's proposal was compared primarily to public schools even though public schools are not subject to the zoning laws.  Moreover, although the Township acknowledges that different uses are subject to different density ratios, Plaintiff's proposal, which combines both a church and a school use, was not compared to any uses other than schools.

The Township's application of an arbitrary school density ratio as a basis for denying Plaintiff's application for an SUP clearly indicates that the Township did not have a compelling interest in denying the SUP and denial of the SUP was not the least restrictive

means of achieving the Township's legitimate governmental interest in controlling density in order to limit the negative impact on neighborhoods and infrastructures.

## III.

The Court concludes that the Township's denial of Plaintiff's application for an SUP to construct a building in excess of 25,000 square feet violated RLUIPA because it imposed a substantial burden on Plaintiff's religious exercise, was not in the furtherance of a compelling government interest, and was not the least restrictive means of furthering a compelling government interest.  Plaintiff is entitled to a declaratory judgment to this effect as well as an injunction enjoining the Township from preventing Plaintiff from proceeding with the construction of a school and church building on its property in conformity with its 2003 request for a special use permit.

An order and judgment consistent with this opinion will be entered.


Date:  ____August 23, 2005____          /s/ Robert Holmes Bell_____
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE